All right, the first case we'll hear this morning is Sustainability Institute v. Trump, and Mr. Panda will be there for you. Good morning, Your Honors, and may it please the Court. Sean Janda for the Federal Government. Plaintiffs contend that the government unlawfully froze or terminated certain grants. They thus sought and received injunctions from the District Court requiring the government to reinstate those grants and to continue to make funds available to the plaintiffs pursuant to the terms of those grant agreements. But, as the Supreme Court has recently made clear twice, claims seeking to enforce the government's contractual obligations contained in grant agreements, like those at issue here, have to go to the Court of Federal Claims, not to District Court. That principle controls here. But didn't they also make—well, let me rephrase. Didn't one of them, the one person who got to cast the deciding vote, make clear that some types of these claims don't have to go to the Court of Federal Claims? So in NIH, Your Honor, the Supreme Court did have that kind of split between— And regardless of whether it was one person, that's actually what the judgment in that case says, right? Like the order that the court issued is consistent with the views of that one person. Correct, but I don't think that helps the plaintiffs in this case.  And I can explain why. So number one, I don't understand the plaintiffs in this case to have actually presented any claims to the District Court that are sort of challenging, higher-level, discrete policy decisions. Sort of, maybe in fairness to them, no one really knew until the Supreme Court did what they did that it really mattered which of those two precise pockets were in, right? I mean, it's possible, I guess, that the plaintiffs sort of couldn't have anticipated that. But I don't think that can save the injunction that's actually in front of this Court. Let's say I agree with you on that. And so, you know, I think, in our view, the proper remedy in this case is to vacate the injunctions the District Court actually entered, to remand, to dismiss the claims the plaintiffs presented to the Court for lack of jurisdiction. That's without prejudice dismissal if the plaintiffs think they have claims that they could bring in a future suit. Why would we go further? I mean, I would think we would just – if you were granted relief, you would just get a vacation of the plenary injunction based on the likelihood of success with respect to jurisdiction. And it would be up to the District Court then to assess it, wouldn't it? Well, thank you, Your Honor, because… For us to – you're suggesting that we actually go further and order dismissal of the underlying case. So the District Court, Your Honor, entered two different injunctions. It entered a final injunction, a permanent injunction, with respect to the APA claims. It was still a preliminary injunction, wasn't it? No, the… Is it a permanent injunction? Yes, Your Honor. Okay. That's a JA8. There's also a preliminary injunction with respect to… Well, that could be reversed if you were getting your relief then, right? Correct. And I think… And what was that injunction? What's the distinction between the two injunctions? So the injunction at JA8 was entered on the plaintiff's APA claims. That's the permanent injunction, the final judgment. There's a separate injunction entered later in the District Court's opinion on the plaintiff's sort of ultra vires or non-statutory review claims. That's a preliminary injunction. There's also actually an earlier injunction entered in the case that I think continues in effect. So there's a sort of final judgment on some claims. There's a preliminary injunction on other claims. I think the Court would have to assess those injunctions, both of those injunctions. And the Court, again, whether it's sort of dismissing the claims that the final judgment was entered on and the plaintiffs could sort of replete different claims if they have different claims, I think the reasoning would probably indicate that the ultra vires claims also have to be dismissed sort of for the same reasons. But regardless, we're not saying the plaintiffs sort of can't bring or couldn't have brought claims that challenge some higher-level policy decision if they were able to sort of identify that decision. So I guess I assume you're familiar with the concept of when the Supreme Court GVRs a case. Yes, Your Honor. I guess what I'm partly trying to figure out is that in this case and in the one that we're hearing right after is like everyone litigated this case before NIH. It turns out that at minimum, NIH disrupts what a lot of people thought. Like, why doesn't it make sense to essentially just GVR both of these cases to the respective district courts and say and to give the plaintiffs and the government a chance to litigate the case and say, why doesn't everyone try this again in light of NIH? Yes, Your Honor. I mean, I think in this case, we think the claims, the district didn't have jurisdiction over the claims. And again, if the Court says that, whether they're dismissed for lack of jurisdiction, whether the plaintiffs have the chance to amend their complaint and replete sort of different claims with the benefit of NIH. Or, I mean, I know your assertion, and I suspect the government's assertion, and I know from their 28-J letter, that the government's assertion in the other case is going to be the plaintiffs didn't plead the kind of claim that NIH says survives. But I also imagine the plaintiffs might say, actually, we did. And then my next thought would be, I don't know, shouldn't the district court figure out what they did and did not plead and what they do and don't want to pursue? Yeah, I think just sort of focusing on this case for a second, everything that happened in district court, in all three of the district court conjunctions, are just so focused on the individual grant. Well, okay, sorry, we've pivoted from what happened in district court. Let's say that I probably agree with you on that. But that's not the question of whether you dismiss the whole complaint. The question of whether you dismiss the whole complaint is what's in the complaint, not how the litigation has heretofore proceeded in the district court pre-NIH. Yes, Your Honor, but I think, again, in the complaint, I mean, certainly the prayer for relief is really focused on these particular sort of freezing and terminations. Wait, doesn't, okay, JA-150, set aside any actions taken by OMB, EPA, USDA, DOT, and DOJ. Yeah, I mean, again, that's sort of in the complaint. I think, really, everything in the complaint, again, is focused on… I just read you verbatim from the complaint. Right, I think… Set aside, I mean, setting aside an action by OMB does not seem like an action for damages that would have to go to court if that book limps. Yeah, again, I think every substantive piece of the complaint really is focused on the… But you agree with me that setting aside an action by OMB, at least prima facie, doesn't sound like the kind of thing that NIH says has to go to the court of claims. I mean, I think, again, they identified a particular… You mean like in the next case where the complaint says, vacate the no memo? Yeah, again, I don't want to fight the court too hard on this because I think the sort of practical distinction between sort of dismissing the claims as we understand them without prejudice and sort of vacating the injunctions and letting the plaintiffs replead different claims under the same docket number, I'm not sure is a huge practical distinction. But only the injunction is… The injunctions are what's on appeal, right? Correct. This appeal is not from a dismissal of the case. We are being asked whether the complaints and the reasoning of the district court can support the injunction ordering the government to pay on these grants, right? Right. I think that's the primary issue before the court. I mean, there is the sort of one clarification or one wrinkle that at least the one injunction is a permanent injunction that's sort of a partial final judgment. But again, I don't want to fight the court too hard. We're not saying the plaintiffs have sort of forever lost the opportunity to plead for claims that could sort of survive the distinction that NIH draws and that could proceed in district court. We just don't think that they've done that in this case, and we certainly don't think that the injunctions in this case are sort of focused on those kinds of higher-level policy determinations that NIH says can proceed in district court. And so all we would ask the court to do is vacate the injunctions that were entered, which I think is worth making clear were improper, and what comes next is not something that we hear too much about the particulars of as a procedural matter. If there are no other questions on the injunctions, I'm happy to cede the rest of my time. Is that it? Is it? Thank you. Ms. Honda?  Good morning, Your Honor. May it please the court, Kim Hunter for the plaintiffs. Your Honors, we agree that the district court injunction, the permanent injunction on plaintiffs' APA claims, was issued prior to the NIH decision and was thus perhaps focused on individual grants when the court could have issued broader ruling on these types of broad-level policy claims, which the plaintiffs did, in fact, plead. At JA149, it's very clear that we asked for declaratory relief related to executive orders, declaratory judgment about entire programs, not individual grants. Those are the first four parts of the relief that we requested, and then also the set-aside relief that Judge Heitens just cited was also broad relief that we requested under the APA. That is relief we, after we learned during discovery that terminations of these grants had been made at a broad programmatic level, we actually reiterated our request to Judge Gergel for broader relief that wouldn't be focused on our individual grants, but would be focused on that larger grant program. And we would be very happy with a remand on this permanent injunction back to the district court so that Judge Gergel would have the opportunity and the benefit of the NIH decision and to broaden that relief to these higher-level policy actions. So with that, I know this is hypothetical because it's not the question in front of us, really, but would that relief look like ordering the government to make grant funds available? If the argument is Congress has ordered you to pay this money to someone, it wouldn't have to be to these particular grantees, but it would have to be available to someone. I think this would be an issue that we could brief in the district court, but I think with regard to if we focus on the EPA grants where we have this very clear statement in the record at JA2370 where the assistant administrator is saying, I, in one day, on February 25th, I terminated an entire program for policy reasons. That is the type of decision that is a higher-level programmatic decision that we would want vacated, and then what flows from that, I think, is something that we could brief in the district court. I think as a practical matter, the grantees in this case certainly are eligible for that program and have qualified and may be the right recipients, but we would be very happy with vacature of that high-level decision. Importantly, though, NIH, as informative as it was on these EPA claims, has nothing to say about the constitutional claims at issue in this case, and it's the constitutional claims. Can I ask you about those? Yes. The D.C. Circuit has had a lot of opinions on this topic lately where they address the same kind of claim that says the executive is not following a statute, and so that's a constitutional violation, a separation of powers problem, and the D.C. Circuit has consistently applied Dalton there to say it's not really a constitutional claim. That's a statutory claim. Would you have us split with the D.C. Circuit on that? Well, Your Honor, I do think this issue is still percolating in the D.C. Circuit. There's certainly been vigorous defense in all three of those cases, and I think two of them are potentially going en banc. The D.C. Circuit has also noted it splits from the Ninth Circuit on this issue, so I think your job is to, you know, see what the Fourth Circuit has to say about this issue, but our view is that, and this is actually consistent with prior D.C. Circuit case law in Aiken County and all the way in Supreme Court case law going back to Youngstown, is that this is not an abuse of discretion within a statutory scheme. This is the EPA and the President acting without any statutory authority at all. But it's not... Okay, so can you help me? It's not clear if we have to reach any of this in this case, but I've always just found this conceptually very hard. So it seems to me that two propositions are... have to be true, but the problem is it creates a real dilemma. So Proposition 1, it cannot be that every time an executive branch official exercises power that a court... that a plaintiff alleges and that a court later concludes was beyond their statutory authority, that they have also violated the Constitution. There has to be room for they were just wrong about the scope of their statutory authority, but that's not a constitutional violation. That seems like it has to be true. On the other hand, it has to be true that sometimes doing things that you don't have statutory authority to, I don't know, like, say, seizing the steel mills, is unconstitutional, that you can't do that. You just literally can't do that, and it violates the... But what I can't figure out is how to draw the line between those two things, right? And it feels to me like, in part, the reason the parties' arguments seem to be talking past each other is your argument focuses on the second scenario, which is there must be some situations where it's unconstitutional, and I think you've got to be right about that. But then the government's like, but OK, but it can't be that every time someone violates a statute, they're violating the Constitution. And when I say violate, I simply mean they understood the statute as giving them more authority than a court later concludes they have, so therefore they went out sort of past their skis of statutory authority. Again, whether we get there or not is a totally different question, but where do you think the line between those two things is? Well, wherever the line is, I think we're very... No, no, no, I know, but how do I go about answering? I can't decide whether a given case falls on a given side of a line until I understand conceptually where the line is. Absolutely, Your Honor, and I can say where I think we're over a line. But I need to know where the line... But I can't assess if you're over the line without knowing where you think the line is. Well, I will say, I'll say this. I think our amicus from the Constitutional Accountability Center I think talks about this nicely too, as this isn't a place where the court has to get into parsing the statute, and this isn't even a situation where I think this would be a very different case if EPA had come in and said, we're looking at this statute and we're going to say that oil companies are disadvantaged communities and we're going to... And your view might be they're wrong about that, they're misinterpreting the statute, but that doesn't mean they're acting unconstitutionally by taking that decision. Exactly, and I don't think that is over the line. What happened here was the administrator, following executive orders from the president, came in and the executive orders say, terminate the Inflation Reduction Act, terminate the IIJA, so that's, first of all, just a straight up terminate something that Congress did. And then the administrator came in, the assistant administrator came in on February 25th and said, we are terminating this entire program, we're not looking at it, we're not redistributing funds, we're just terminating it for policy reasons. And that's what Judge Kavanaugh said in Aitkin County is clearly unconstitutional. And so some of these grant cases are more complicated than ours, and some you have to kind of get under the hood and look at exactly where the compliance is with the grant program. That's not the case here. They made it very easy, Judge Gergel ordered discovery to figure out exactly what was going on, and to their credit, defendants told straight up, we are just eliminating this entire program. Speaking of things that are easy, thankfully I think we have an easier question, right, because it's just, again, an injunction on the grants that's in front of us, right, and I think we can all agree that neither the Constitution nor the statutes give these particular grantees any rights to the money, right, it's the grants, right, the contractual agreement that gives them the right to the funds, isn't that right? I don't believe so, Your Honor, and if you think of a different hypothetical where, say, a grantee had a grant, and the administration came in and said, we're eliminating this grant because you're a Catholic, or we're eliminating your grant because you're black, that grantee would have a cause of action under the First Amendment or under the Equal Protection Clause, that would be the source of their rights, and their source of their rights to hang on to that grant, it wouldn't be the contractual arrangement, and that's essentially what's happening here. The government did an illegal, unconstitutional thing in terminating these grants at a policy level. Even if we accept that theory that's not in terminating your client's grants, right, it would be in eliminating a program that you say Congress requires the executive to have, right, but if the program exists and funds are available for some grantee, right, that's what the statute entitles them to under your theory, and hypothetically the Constitution if we accept that theory, but not these particular grantees, right, their rights come from a contract. Their rights also come from the Constitution, and they have a right that the executive branch will faithfully execute the law, and they have the right that separation of powers will continue to exist, and that's how grant programs have managed to work since the Nixon era. There is an understanding from grantees that the Constitution will function. Pardon. Congress waived the government's sovereign immunity on for contract claims, but in a pretty limited fashion, right, and they directed these claims to go to a certain court, and only certain remedies are available in that court, and so I think it's kind of, Congress hasn't waived the right to, there's no way around that to say well the statute, unless you can identify somewhere in the statute where these particular grantees are entitled to these funds, right, it's the contract that gives them the right to the particular funds, even if someone, right, even if Congress has mandated the executive to pay under a certain program to pay these funds to someone. I don't agree with that analysis, Your Honor. I think they were given the right to that funds, and subsequent to that, they also have the right to separation of powers. They've been given their right to the funds in the statute. Congress didn't give them the right to the funds. Congress conveyed a certain amount, appropriated a certain amount of money for the executive, and the executive is then under the obligation to disperse the monies in accordance with the program, but the only way you get any standing in any of this is because you were a grantee under a contract with the agency, and that contract has a lot of provisions in it, regulations that are incorporated, but what you're trying to do is to avoid the limited waiver of jurisdiction by alleging some overarching constitutional claim that applies almost to every time we're confronted with a governmental violation of a statute. I don't believe so, Your Honor. I understand the point that initially these grantees got their rights to this money through being granted this money and going through this extensive process. Absolutely correct. And certainly the grantees in this case have standing because of their grants. I will note that not every plaintiff in this case has a finalized grant agreement. Some are subgrantees, some are still negotiating their grant agreement, so they certainly cannot go to the Court of Federal Claims. But historically, the Court of Federal Claims has not They may not have standing to bring the case, but that's not the case. Well, yeah, it has not been contested, and certainly I think they do have standing. Historically, the Court of Federal Claims, there have been a lot of grant programs where the Court of Federal Claims and the Federal Circuit has said, this is not appropriate for our review. And the reason is, is the way that these grant programs work is it's an ongoing relationship between the grantee and the government. It's not a contract where they just say, we guarantee you $10 million. How these grant programs work is there are strings attached, and they only get that money if they continue to do the work. And the Federal Circuit has looked at this time and time again, in the Lemme case, in the MCMS case, they discussed it in the BOAS case, and talk about when there's this type of strings attached relief, that is not relief that you can get from the Court of Federal Claims. So are you arguing that these grants aren't contracts? We have never thought of them as contracts. Doesn't that ship kind of sail because of the Supreme Court's Department of Education and NIH cases? Well, again, those didn't speak to this particular circumstance, and we haven't pled our claims as relief for contracts. So the relief we thought is this broader level of relief that's about the constitutional violations, and then that that remedy then flows to the individual grantees. Yeah, I guess that's the whole point of a Megapulse test, right, is that you try to figure out if something that's not pled as a contract claim really is one. That's exactly right. And here, the source of the rights are constitutional rights and statutory rights, not contract rights. And then the relief that we are requesting for the Megapulse test... I don't follow. You know, it's so attenuated. You say that your claimant whose grant was cut off has a constitutional claim to regulate the separation of powers under the Constitution. It's just such a big jump. I don't see why we don't always address these disputes that come to court under the most directly applicable source, whether it's a contract or a statute. And if we can resolve a claim under a statute, why would we reach beyond that and say, violation of the statute violates the Constitution? I mean, the Constitution creates a structure. Now, if you have something like Youngstown Steel, I'm not even sure that's totally a separation of powers question. That's a question of governmental power, which was extraordinary. But setting that aside, we don't have something of that caliber. What we have here is Congress appropriating money and the executive issuing grants of that appropriated money, and a new administration coming in and saying, we're ending those grants. And there are a lot of ways that you can address it. For some reason, I don't know why you want any relief beyond the idea that you reinstate your grantees to the position that they were. It seems to me that's the ultimate claim. Your interest in having a court decide whether the separation of powers and all its history is involved here is almost academic, isn't it? Respectfully, Your Honor, I do think this is pretty fundamental. This is a situation where... It's very fundamental. It's so fundamental that it applies to everybody in the country. That's the problem with it. Well, and it's particularly... The plaintiffs here are particularly harmed. And as the Supreme Court said in Collins v. Yellen, where a party is aggrieved... They weren't particularly harmed by the separation of powers. They were particularly harmed because their grants were terminated. Respectfully, they were harmed by the separation of powers, Your Honor. There was a grant program that Congress put into the world through the Inflation Reduction Act with great specificity. The plaintiffs in this case then relied on that grant program and spent years applying for these grants, doing all of the work, working with their communities, getting projects ready, started that work, and then the executive branch came in and said, we are just canceling what Congress told us to do. We are not going to do it. We are going to refuse to do it. I'm thinking about the case that the Supreme Court ultimately said the line-item veto statute was unconstitutional, and in that case, as I recall, first a member of Congress tried to sue, and the court said, I think 9-0, that that person lacked standing because members of Congress don't have an interest in the efficacy of their votes. But then someone who lost some money, I think it was President Clinton, line-item vetoed something, and someone who would have gotten money as a result of that line-item veto didn't get the money, and that meant they had standing because they lost money they would have gotten but for the separation of powers violation, and then the court said the line-item veto violates the Constitution. Is that the basic structure of your argument here? That's exactly right, Your Honor, and, I mean, there has to be some way to enforce the separation of powers, and then Judge Kavanaugh talked about this quite extensively in Aiken County, and this is a very straightforward situation. There's no, unlike some of these other grant cases, there's no straight up the executive branch saying we will not administer those grants. To the extent that Youngstown is a separation of powers case, the steel mill people were mad because someone took their steel mill, which gave them standing, and then they said, because we're mad someone took our steel mill, we get to raise the question that the President absolutely doesn't get to do this thing, even though separation of powers benefits all of us, someone took our steel mill, which is why we have Article 3 standing, same basic theory. Yes, that's exactly right, and I think Justice Barrett confirms this in NIH by saying just because there are grants involved here, doesn't mean that all of your claims have to go to the Court of Federal Claims. What kind of relief are you looking for now in view of NIH? What should we be doing with what's before us, under your view? Yes, with respect to the APA claims and the permanent injunction, we would like you to remand that to Judge Goebel with instruction for him to broaden the relief in keeping with the NIH case, and then with respect to the preliminary injunction, which is reviewed on an abuse of discretion standard, and by the way, this Dalton argument was never raised before Judge Goebel, so he cannot have abused his discretion by not considering it, we would ask that the preliminary injunction remain in place based on our constitutional claims, which are, to the extent they're affected by NIH, I think NIH just shows how they are valid. Okay, thank you. Alright, Mr. Johnathan? You have four minutes, yeah. Thank you, Your Honor. I'd just like to make three quick points, if I may. So first, I think the actual disposition of this appeal, the court can reach quite easily, the injunctions here just look exactly like the sort of injunctions the Supreme Court has said are not appropriate in district court, and the court could say that, and not say too much more, and let the parties figure out, moving forward, whether the plaintiffs have other constitutional claims, statutory claims, other sorts of claims that could support different relief back in district court, and I think that would be appropriate for the court to do. But second, if the court does feel an obligation or desire to say more, on the Dalton question specifically, I think this case is exactly like the Global Health Council case that Your Honor referenced in the D.C. Circuit, where the D.C. Circuit is now denied en banc review. It was sort of a case brought by grantees, challenging what they said was the entire failure to disperse funds under statutory grant programs. They tried to constitutionalize those claims, and the D.C. Circuit just applied Dalton to say, no, no, that's a statutory claim, it's not a constitutional claim. It doesn't mean you can't bring it, it doesn't mean you don't necessarily have a claim, but it's a statutory claim subject to the limitations that Congress has placed on judicial review of statutory claims. So I think if the court were to address the Dalton question, they could just follow the D.C. Circuit's lead and say that here. And if the court wanted to say more, again, about Youngstown, I think Dalton tells you how to think about Youngstown, which is that there, the only basis of any asserted authority to seize the steel mills was the president's inherent constitutional authority, so the whole case turned on the Constitution. They have a response to that. The response to that would be like, surely Youngstown does not come out completely differently if the president invoked some statute that plainly did not apply and simply asserted that it gave him the authority to steal the steel mills. It can't possibly be that the fundamental nature of the Youngstown litigation would have changed. And President Truman just says, I don't know, like, pick a provision in Title 42 and say that gives me the authority. And then the court's like, well, that obviously doesn't give you the authority to do that. Yeah, and I think President Truman would have lost. I mean, I think that, like, the fact that the claim is properly maybe in that circumstance would probably be applied as a statutory claim, not a constitutional claim. But it would be. So even if the president identified a transparently inapplicable statute, that means it's not a constitutional claim now. It's only a statutory claim. I mean, it might well be, and you would lose, I think, that statutory claim. That just seems very weird to say that the defendant at its unilateral election can convert a constitutional claim into a statutory claim by citing any provision of the U.S. Code. I think even the court thinks that sort of goes too far. I mean, here, though, here isn't the question whether the plaintiff is making a statutory or constitutional claim. I mean, and that's the problem, right, is the constitutional claim is you didn't follow the statute. Right. I think that everything just merges in this case. The plaintiff who has the authority to decide whether it's a constitutional or statutory claim, we might look through the constitutional claim and say, look, your constitutional claim is just relying on a statute, right? That's dulcet. Right. I think in this case, you just look through whatever framing the plaintiffs have and the whole fight in district court, if the plaintiffs were to bring this sort of claim and we were to really litigate it, I think it would be whether the statutes in this case allow the government to do what the government has done. And that's just a statutory claim. We're not saying they can't bring that claim. We don't think that's the claim that was really presented to or adjudicated by the district court. You are saying they can't bring that claim, right, because you're saying it's ultra... they have to rely on an ultra-virus claim to bring that and then because there's no specific statement in the statute that they're entitled to these grants, then they fail that test. So I think there's two different things around here. I think on the relief by the district court, which focuses on the grant terminations, we think that's precluded by NIH. We think there is a different sort of claim, like the claim that was brought in the Global Health Council case. If the plaintiffs were to say, moving forward, you have decided you're not going to spend any of this money and the statute requires you to spend it, that sort of statutory claim, we think there would be a lot of problems with it in this case. The money has to be available to someone is a different claim. Right. It's a different claim. It's not one that was adjudicated by the district court. And so we're happy to sort of play about that in the first instance in the district court in this case. But they can't say the injunction was ironed. So you have a red light. We'll come down in the Greek Council and proceed on to the next case.
judges: Paul V. Niemeyer, Allison J. Rushing, Toby J. Heytens